# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

|  |  |  |
|---|---|---|
| DORIS A. HUFFMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:10CV537 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Doris A. Huffman, brought this action pursuant to Sections 205(g) and

1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and

1383(c)(3)), to obtain review of a final decision of the Commissioner of Social Security

denying her claims for a Period of Disability ("POD"), Disability Insurance Benefits

("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Act.[1]

The Court has before it the certified administrative record and cross-motions for judgment.[2]

---

[1] Plaintiff's Complaint (Docket Entry 1) and brief (Docket Entry 7) suggest she only applied for DIB and a POD, but she also applied for SSI (Tr. 15, 111-114).

[2] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Act, 42 U.S.C. § 405(g).

# I. PROCEDURAL HISTORY

Plaintiff protectively filed applications for a POD, DIB, and SSI benefits on March 6, 2006 alleging a disability onset date of November 21, 2005. (Tr. 15, 105-114.)[3] The applications were denied initially and upon reconsideration. (*Id.* at 66-85.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 86.) Present at the July 16, 2008 hearing were Plaintiff and her attorney. (*Id.* at 24, 24-65.) The ALJ determined that Plaintiff was not disabled under the Act. (*Id.* at 15-23.) On May 14, 2010 the Appeals Council denied Plaintiff's request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 1-5.)

# II. FACTUAL BACKGROUND

Plaintiff was forty-nine years old on the alleged disability onset date, had a high school diploma, was able to communicate in English, and had past relevant work as a line leader in the furniture industry. (*Id.* at 22, 30, 42.)

# III. STANDARD FOR REVIEW

The Commissioner held that Plaintiff was not under a disability within the meaning of the Act. Under 42 U.S.C. § 405(g), the scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). This Court's review of that decision is limited to determining whether there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as

---

[3] Transcript citations refer to the administrative record.

adequate to support a conclusion." *Hunter*, 993 F.2d at 34 (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). It "consists of more than a mere scintilla" "but may be somewhat less than a preponderance." *Id.* (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

The Commissioner must make findings of fact and resolve conflicts in the evidence. *Hays*, 907 F.2d at 1456 (citing *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)). The Court does not conduct a de novo review of the evidence nor of the Commissioner's findings. *Schweiker*, 795 F.2d at 345. In reviewing for substantial evidence, the Court does not undertake to re-weigh conflicting evidence, to make credibility determinations, or to substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citing *Hays*, 907 F.2d at 1456). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Craig*, 76 F.3d at 589 (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). The denial of benefits will be reversed only if no reasonable mind could accept the record as adequate to support the determination. *See Richardson*, 402 U.S. at 401. The issue before the Court is not whether Plaintiff is disabled, but whether the Commissioner's finding that Plaintiff is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *See id.*; *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. THE ALJ'S DISCUSSION

The Social Security Regulations define "disability" for the purpose of obtaining disability benefits under the Act as the "inability to do any substantial gainful activity by

3

reason of any medically determinable physical or mental impairment[4] which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(1)(a), 1382c(a)(3)(A). To meet this definition, a claimant must have a severe impairment which makes it impossible to do previous work or substantial gainful activity[5] that exists in the national economy. 20 C.F.R. § 404.1505(a); *see also* 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

## A. The Five-Step Sequential Analysis

The Commissioner follows a five-step sequential analysis to ascertain if the claimant is disabled, which is set forth in 20 C.F.R. §§ 404.1520, 416.920. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The ALJ must determine in sequence:

(1)     Whether the claimant is engaged in substantial gainful activity (*i.e.*, whether the claimant is working). If so, the claimant is not disabled and the inquiry ends.

(2)     Whether the claimant has a severe impairment. If not, then the claimant is not disabled and the inquiry ends.

(3)     Whether the impairment meets or equals to medical criteria of 20 C.F.R., Part 404, Subpart P, Appendix 1, which sets forth a list of impairments that warrant a finding of disability without considering vocational criteria. If so, the claimant *is* disabled and the inquiry is halted.

---

[4]  A "physical or mental impairment" is an impairment resulting from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

[5]  "Substantial gainful activity" is work that (1) involves performing significant or productive physical or mental duties, and (2) is done (or intended) for pay or profit. 20 C.F.R. §§ 404.1510, 416.910.

4

(4)     Whether the impairment prevents the claimant from performing past relevant work. If not, the claimant is not disabled and the inquiry is halted.

(5)     Whether the claimant is able to perform any other work considering both her residual functional capacity[6] and her vocational abilities. If so, the claimant is not disabled.

20 C.F.R. §§ 404.1520, 416.920.

Here, the ALJ first determined that there was no evidence in the record that Plaintiff had engaged in substantial gainful activity at any time since her alleged onset date of November 21, 2005. (Tr. 17.) The ALJ next found in step two that Plaintiff had a severe impairment: "status post bilateral knee replacements." (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.* at 18.) At the fourth step of the sequence, the ALJ determined that Plaintiff was not disabled from November 21, 2005 through the date of the decision because she could perform her past relevant work as a line leader in the furniture industry. (*Id.* at 22-23.) The ALJ concluded in the alternative that even if Plaintiff chose not perform her past relevant work, the Medical-Vocational Guidelines (the "Grids") directed a conclusion that Plaintiff was not disabled. (*Id.* at 23.)

## B. Residual Functional Capacity Determination

Prior to step four, the ALJ determined Plaintiff's RFC based on his evaluation of the

---

[6] "Residual functional capacity" is the most a claimant can do in a work setting despite the physical and mental limitations of her impairment and any related symptom (*e.g.*, pain). *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also Hines v Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

5

evidence. (*Id.* at 18-22.) The ALJ determined that Plaintiff retained the RFC to perform the full range of light work. (*Id.* at 18.) In reaching a conclusion about Plaintiff's RFC, the ALJ considered the evidence and found that "the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the residual functional capacity assessment . . . ." (*Id.* at 21.)

### C. Past Relevant Work

The ALJ found in step four that Plaintiff could perform her past relevant work as a line leader in the furniture industry as it was actually performed. (*Id.* at 22-23.) The ALJ concluded further that even if Plaintiff could not return to her past relevant work, the Grids directed a conclusion that she is not disabled under the Act. (*Id.* at 23.)

### V. ANALYSIS

In pertinent part, Plaintiff argues that the ALJ erred in concluding that she could perform a full range of light work and erred further in concluding that she could perform her past relevant work. (Document Entry 7 at 6.) For the reasons set forth below, the undersigned agrees that the ALJ did err in this respect, that the errors were not harmless, and that remand is therefore proper.

### I. The ALJ Erred Regarding Plaintiff's RFC and Erred Further at Step Four.

### A. The ALJ Did Not Assess Plaintiff's RFC Properly.

Plaintiff contends that the ALJ's conclusions that she can perform light work as well as her past work are based upon errors of law and unsupported by substantial evidence.

6

(Docket Entry 7 at 6.) Under Social Security Administration regulations, "[u]nless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the Social Security Administration]." 20 C.F.R. § 416.927(e)(2)(ii); 20 C.F.R. § 404.1527(e)(2)(ii). *See also* Social Security Regulation ("SSR") 96-8p, *Assessing Residual Functional Capacity in Initial Claims* (concluding that "[t]he RFC assessment must always consider and address medical source opinions" and "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted"); SSR 96-6p, *Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants* (concluding that ALJ's "may not ignore these opinions and must explain the weight given to these opinions in their decisions"). The court "cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence." *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984).

Nevertheless, an ALJ need not discuss each item of evidence in the record, but instead may limit explanation of the weight given "to obviously probative exhibits." *Id.* (citation omitted). Furthermore, an ALJ's failure to expressly state the weight given to a medical opinion may be harmless error, when the opinion is not relevant to the disability determination or when it is consistent with the ALJ's RFC determination.[7] Put differently,

---

[7] *See, e.g., Johnson v. Barnhart*, 434 F.3d 650, 655-56 (4th Cir. 2005) (concluding that court need not

errors are harmless in social security cases when it is inconceivable that a different administrative conclusion would have been reached absent the error.[8]

Plaintiff's argument implicates the opinions of (1) Dr. Joseph P. Appollo, a licensed psychologist with the North Carolina Department of Health and Human Services, Disability Determination Services, who examined Plaintiff on May 5, 2006 (Tr. 384-87), (2) non-examining State agency physician Dr. Gloria Roque, who reviewed the record and filled out a Mental Residual Functional Capacity Assessment ("MRFCA") as to Plaintiff on July 7, 2006 (*id.* at 405-08), and (3) Dr. W.H. Perkins, who filled out an MRFCA as to Plaintiff on September 27, 2006 (*id.* at 437-39). As explained below, the ALJ erred by failing to properly evaluate this line of evidence. Consequently, the ALJ failed to articulate a meaningful evaluation of Plaintiff's mental residual functional capacity.

### i.   Dr. Appollo

On May 5, 2006, Dr. Appollo performed a consultative mental examination for the state disability determination services office. (Tr. 384-87.) Dr. Appollo's May 24, 2006 summary and conclusions were as follows:

> The patient currently is functioning in the borderline range of intelligence and has a history of special education. The

---

evaluate propriety of weight given to treating physician opinion that was submitted after date last insured and "not relevant" to the claimed period of disability); *Morgan v. Barnhart*, 142 F. App'x 716, 722-23 (4th Cir. 2005) ("[A]ssuming . . . that this opinion is a medical opinion due special weight under the treating-physician rule, any error in failing to credit this opinion was harmless."); *Yuengal v. Astrue*, 4:10-CV-42-FL, 2010 WL 5589102, at *9 n.9 (E.D.N.C. Dec. 17, 2010) (unpublished) (concluding that the failure to acknowledge medical opinions was harmless error).

[8] *See, e.g., Austin v. Astrue*, No. 7:06cv00622, 2007 WL 3070601, at *6 (W.D. Va. Oct. 18, 2007) (unpublished) (citing *Camp v. Massanari*, 22 Fed. App'x 311 (4th Cir. 2001)); *see also Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.").

8

patient was cooperative and friendly and the test results appear to be valid. The patient shows some degree of impairment in verbal memory skills and borderline skills in visual and attention and concentration skills.

The patient has difficulty understanding some directions and has problems following through with tasks. She can understand simple directions better than complex directions.

Patient does show borderline ability in attention and concentration. She is able to get along with others and shows no degree of impairment in interpersonal relationships. Patient was depressed after her stroke but denies any significant depression at this point. The patient does have a history of alcohol problems but now has been sober for a period of ten years.

(Tr. 386-87.)[9] Dr. Appollo's diagnostic impression was as follows. Axis I, which sets forth clinical disorders, listed Plaintiff as having "cognitive deficits." (*Id.* at 387.) Axis II, which designates personality disorders or mental retardation, listed Plaintiff as displaying borderline intelligence. (*Id.*) Axis III, which lists general medical conditions, noted that Plaintiff had a history of stroke and knee replacement surgery. (*Id.*) Axis IV, which sets forth psychosocial and environmental problems, listed "health related problems." (*Id.*) Last, Axis V, which sets forth a GAF score, set Plaintiff's current GAF score at 52.[10] (*Id.*) Plaintiff's verbal IQ was

---

[9] At step two, the ALJ concluded that Plaintiff's stroke was a non-severe impairment as follows, "The claimant testified that she has used a cane for balance since 2002 when she experienced a stroke. The undersigned notes that claimant has not alleged any condition arising from her stroke that would prevent her from performing substantial gainful activity and that the claimant worked for at least three years following her stroke. Therefore the undersigned finds that the claimant's residuals [sic] effects of a stroke are not a severe impairment." (Tr. 8-9.) Where, as here, an ALJ finds at least one severe impairment, all impairments, both severe and non-severe, are considered in assessing a claimant's RFC. 20 C.F.R. §§ 404.1520(e), 20 C.F.R. 416.920(e); 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. Even assuming the accuracy of the ALJ's step two analysis, the ALJ was thus obliged to consider any impairments related to Plaintiff's stroke in assessing her RFC because Plaintiff's knee problems were severe.

[10] The multiaxial system of analysis is used to assess a patient's physical and mental condition along

76, her performance IQ was 75, and her full scale IQ was 74.[11] (*Id.* 385.)

Unlike the medical opinions of Drs. Roque and Perkins, discussed below, the ALJ did mention Dr. Appollo by name in his decision. He concluded that:

> The claimant underwent a psychological evaluation by Joseph P. Appollo, Ph.D., in May 2006. The claimant's affect was observed to be appropriate and the results of the examination appeared to be valid. The claimant denied any previous mental health therapy or treatment. She described herself as a low achieving student who was in special classes in school. On the Weschsler Adult Intelligence Scale – Third Edition, the claimant achieved a verbal IQ of 76, a performance IQ of 75 and a full scale IQ of 74, placing her in the borderline range of intelligence. Dr. Appollo concluded that the claimant showed some degree of impairment in verbal memory skills and borderline skills in visual, attention and concentration skills. The doctor found that the claimant would be able to understand simple directions, get along with others, and showed no degree of impairment in interpersonal relationships.

(*Id.* at 20.)

Nevertheless, despite summarizing Dr. Appollo's conclusions, the ALJ never returned to address them. The ALJ did not accept these conclusions. The ALJ did not reject them. And the ALJ never incorporated any of these findings, such as a limitation to simple tasks or to simple, routine, and repetitive tasks, into Plaintiff's RFC. As explained, while the ALJ does not have a duty to discuss every document of record, he does have an obligation to explain the weight of the opinions of probative medical sources. Without an explanation from the ALJ, the undersigned is unable to determine if the ALJ intended to

---

five axes, each referring to a specific domain of information. The GAF ranges from zero to one hundred and is used to rate an individual's psychological, social, and occupational functioning. *See* Am. Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") 27, 32-34 (4th Ed., Text Revision 2000). Scores between 51-60 indicate moderate symptoms or moderate difficulties in social, occupational, or school functioning. *Id.*

[11] Generally, an IQ of 70 is just at the borderline of mental retardation. DSM–IV at 41-43.

give little weight to Dr. Appollo's opinion or if the ALJ inadvertently overlooked key aspects of it. The ALJ's acknowledgement of Dr. Appollo's opinion and subsequent failure to reject it or incorporate it in whole or in part into Plaintiff's RFC was error.[12]

## ii. Drs. Roque and Perkins

On July 7, 2006, after examining the entire record, Dr. Roque completed a Mental Residual Functional Capacity Assessment ("MRFCA") as to Plaintiff. Dr. Roque concluded the following regarding, respectively, Plaintiff's (A) understanding and memory, (B) sustained concentration and persistence, (C) social interaction, and (D) adaptation:

> A. Claimant would learn and remember simple work routines with practice. Claimant could understand and remember simple instructions but not detailed ones.

> B. Claimant could carry out simple instructions and sustain attention to simple/familiar tasks for extended periods. Claimant would benefit from casual supervision. Claimant would function best with a familiar, predictable work routine without: excessive workloads, quick decision making, rapid changes, and multiple demands. Claimant would benefit from regular rest breaks and a slowed pace.

> C. [N]o limitations.

---

[12] *See, e.g., Confere v. Astrue*, 235 Fed. App'x 701, 703 (10th Cir. 2007) (finding error in part because "[t]he ALJ mentions [consulting psychologist's] assessment during his discussion of the evidence . . . but he does not state that he is rejecting any part of it and gives no indication as to why he would disregard [that part of the] conclusion that [was inconsistent with the ALJ's RFC determination]"); *Ferguson v. Astrue*, C/A No. 4:09–3310–RMG, 2010 WL 5439755, at *4 (D.S.C. Dec. 28, 2010) (unpublished) ("When the ALJ fails to provide the reviewing court an explanation of the basis for finding, or not finding, functional restrictions, then the ALJ's decision is without substantial basis"); *Krapf v. Astrue*, No. 09–60763–CIV, 2009 WL 4892337, at *14 (S.D. Fla. Dec. 16, 2009) (unpublished) (finding error and remanding where "after acknowledging [state agency psychological consultant's] opinion, the ALJ never returned to it; he never accepted it, never rejected it, and never incorporated it into the RFC"); *Payne v. Barnhart*, 366 F. Supp. 2d 391, 402 (W.D. Va.2005) (finding error, in part because "while the ALJ discussed the findings of [state agency consulting] psychologist Wyatt, she neglected to state, or even hint, whether she was accepting or rejecting it").

> D. Claimant could adapt to infrequent, well explained changes.

(Tr. 407.) Dr. Roque's preliminary conclusions in the MRFCA also indicated that Plaintiff was markedly limited in her ability to understand and remember detailed instructions and in her ability to carry out detailed instructions. (*Id.* at 405.)

Dr. Roque also filled out a Psychiatric Review Technique ("PRT") form as to Plaintiff. (*Id.* at 391-404.) Citing Plaintiff's cognitive deficits and borderline intellectual functioning as a "medically determinable impairment," Dr. Roque indicated further that Plaintiff's "[m]emory impairment" demonstrated a "[p]sychological or behavioral abnormalit[y] associated with a dysfunction of the brain." (*Id.* at 392.) Dr. Roque also found moderate difficulties in maintaining concentration, persistence, or pace. (Tr. 401.) Her summary noted "evidence of verbal memory deficits and general memory impairment," borderline IQ, and "difficulty understanding some directions and following through with tasks." (*Id.* at 403.) Dr. Roque noted further that Plaintiff "alleged a stroke at age 39, but continued to work at [a] semi-skilled job" and "[d]espite memory impairment she still drives, shops, does light chores, manages own finances, phones, does Bible study, pastors a very small church, reads, and works in her wood shop. On [activities of daily living] she did not [complain of] memory, comprehension, or concentration difficulties. No interpersonal difficulties noted. . . . [Plaintiff's] cognitive disorder would not prevent her from engaging in simple familiar tasks." (*Id.* at 403.)[13]

---

[13] Defendant asserts that "Plaintiff never alleged mental limitations when she applied for benefits." (Docket Entry 9 at 11 (citing Tr. 137).) Plaintiff applied for benefits on March 6, 2006. (Tr. 15, 105-114.) A few weeks later she indicated in her Function Report to the Agency, dated March 26,

On September 27, 2006, Dr. Perkins also filled out an MRFCA as to Plaintiff. Dr. Perkins concluded the following regarding Plaintiff's (A) understanding and memory, (B) sustained concentration and persistence, (C) social interaction, and (D) adaptation:

A. Claimant retains the ability to comprehend, understand and follow simple instructions. She is able to conduct Bible study, pastor a small church, run errands and manage finances.

B. She has the ability to maintain concentration [and] attention to complete routine tasks.

C. No limitations.

D. She can adapt to routine changes.

   She has the ability to do simple, routine and repetitive tasks in a low stress setting.

(*Id.* at 439.) Dr. Perkins also filled out a PRT form indicating that Plaintiff had a cognitive deficit disorder regarding her memory (*id.* at 424), that she had moderate difficulties in maintaining, persistence, concentration, or pace (*id.* at 433), and recommending that Plaintiff be limited to simple, routine, repetitive tasks (*id.* at 435).

The ALJ did not mention Drs. Roque or Perkins by name in his decision. Rather, the ALJ cited SSR 96-6p for the principle that the opinions of non-examining experts "must be considered and weighted" because they were "highly qualified physicians and psychologists." (Tr. 22.) The ALJ stated that "[i]n the absence of a functional capacity evaluation completed by a treating physician, the undersigned has given substantial weight to the findings of the

---

2006, that she "can't remember things" because she had a stroke and that "[s]ometimes when I am reading I have to read it selvel [sic] time[s] to understand." (Tr. 151.) A Function Report – Adult – Third Party, filled out by Plaintiff's mother on March 27, 2006, also asserts that Plaintiff's conditions affected her memory and concentration. (*Id.* at 157.)

13

State agency medical consultants." (*Id.*) The ALJ then noted that the State agency physicians concluded that Plaintiff could perform light work. (*Id.*) In attributing substantial weight to the findings of State agency medical consultants, the ALJ may have only intended to adopt the exertional limitations (*i.e.*, light work) set forth by the non-examining State agency physicians, because that is the only limitation the ALJ included in Plaintiff's RFC. If so, the ALJ erred by ignoring—that is, by failing to accept, reject, or address—the findings of Drs. Roque and Perkins, the non-examining state agency experts who considered Plaintiff's non-exertional limitations. Alternatively, one might read the ALJ's decision as attributing substantial weight to the opinions of *all* non-examining State agency experts, including Drs. Roque and Perkins. Under this interpretation, the ALJ still erred, and in fact erred more egregiously, because he attributed substantial weight to the findings of Drs. Roque and Perkins, but then failed to incorporate those findings in Plaintiff's RFC. Thus, because the ALJ erred in either event,[14] the undersigned need not resolve any ambiguity in

---

[14] *See, e.g., Jensen v. Astrue*, No. 6:11–cv–06298–ST, 2012 WL 4470507, at *8 (D. Or. Sept. 25, 2012) (unpublished) ("The ALJ also failed to address RFC assessments prepared by two state agency reviewing psychologists, each of whom determined that Jensen had moderate limitations in several important functional area[s]. Because the RFC does not account for these potential additional limitations, the RFC assessment is erroneous.") (citations omitted); *Pryor v. Astrue*, No. 4:11 CV 390 ERW/DDN, 2011 WL 7053618, at *10 (E.D. Mo. Nov. 29, 2011) (unpublished) ("[State agency consultant] opined that plaintiff also had moderate difficulties in maintaining concentration, persistence, or pace and mild restrictions in activities of daily living. The ALJ's RFC determination does not reflect these restrictions, and therefore, is inconsistent with [the State agency consultant's] opinion. As such, the ALJ was required to explain why he rejected or otherwise afforded little weight to [State agency consultant's] opinion"); *Mohammed v. Astrue*, No. 1:10–CV–1518–JFK, 2011 WL 2621362, at *8 (N.D. Ga. July 1, 2011) (unpublished) ("Here, the ALJ not only failed to state the weight he gave to the opinions of the three State agency psychological consultants, he did not even mention them in his decision. By ignoring these opinions, the ALJ did not comply with SSR 96–6p."); *Rich v. Astrue*, No. 2:10cv00026, 2011 WL 476609, at *5 (W.D. Va. Feb. 7, 2011) (unpublished) ("The state agency psychologists . . . found that Rich could perform the mental demands of simple, unskilled and nonstressful work. In his residual functional capacity finding, the ALJ failed to include the state agency psychologists' findings that Rich would be limited to nonstressful work, and he also

14

this regard, insofar as one exists.

To sum, the ALJ did not find that the "residual effects" of Plaintiff's stroke were a severe impairment at step two.[15] The only impairment found by the ALJ to be severe related to Plaintiff's status post bilateral knee replacements. (Tr. at 17.) Yet, three State agency

---

failed to address why he was ignoring the finding. That being the case, I cannot determine that substantial evidence exists to support the ALJ's finding with regard to Rich's mental residual functional capacity."); *Cherry v. Astrue*, No. 5:09–CV–419–M, 2010 WL 2541920, at *3 (W.D. Okla. May 17, 2010) (unpublished) ("Thus, the consultative examiners' assessments of Plaintiff's mental capabilities were contrary to the ultimate conclusions reached by the ALJ and the ALJ's failure to discuss and weigh this record expert medical evidence violated the requirements of Social Security Ruling 96–6p and undermined the ALJ's ultimate conclusions regarding Plaintiff's alleged mental impairments. On remand the ALJ should explain why he failed to include two of Dr. Hill's mental RFC findings in his RFC determination.") (citations omitted); *Wood v. Comm'r of Soc. Sec.*, No. 6:09-CV-1090–Orl–GJK, 2010 WL 1408404, at *13 (M.D. Fla. Apr. 2, 2010) (unpublished) (holding that RFC determination was in error because ALJ found Plaintiff suffered from moderate mental limitations but failed to include those in RFC); *Simmons v. Barnhart*, 327 F. Supp. 2d 1308, 1315 (D. Kan. 2004) (remanding upon concluding that the ALJ erred in failing to discuss why his determination did not include all mental limitations found by non-examining state agency psychologists).

[15] If an ALJ concludes that a claimant has a colorable claim of mental impairment the ALJ must follow a special technique to evaluate such impairments and rate the claimant's functional limitation in four broad functional areas. 20 C.F.R. §§ 404.1520a(a)-(e), 416.920a(a)-(e). *See, e.g., Moore v. Barnhart*, 405 F.3d 1208, 1214 (11th Cir. 2005); *Witt v. Barnhart*, 446 F. Supp. 2d 886, 898 (N.D. Ill. 2006). A colorable claim has been defined as one "which is not 'wholly insubstantial, immaterial, or frivolous.'" *Dykstra v. Barnhart*, 94 Fed. App'x 449, 450 (9th Cir. 2004) (citation omitted) ("Evaluating psychologist . . . concluded that a diagnosis of conversion disorder or somatoform pain disorder might be appropriate, and that [the claimant] might also suffer from 'post traumatic stress-type symptoms.' This evidence constituted a colorable claim of mental impairment, and therefore the ALJ was required to follow the procedures established in § 1520a."). Here, the ALJ concluded at step two that the "residual effects" of Plaintiff's stroke were not a severe impairment. (Tr. at 18.) The ALJ's step two conclusion that these "residual effects" were not a severe impairment seems to presume that these effects are a medically determinable mental impairment triggering the need for the application of the special technique. *See Sturdivant v. Astrue*, No. 7:11–CV–53–D, 2012 WL 642541, at *4-5 (E.D.N.C., Feb. 1, 2012) (unpublished) ("The court reads the ALJ's decision as determining plaintiff's depression to be an impairment since the finding that the depression was not severe presumes it to be an impairment."). Likewise, as explained above, three psychologists (one examining and two non-examining) concluded that Plaintiff suffered from cognitive deficiencies and the ALJ mentioned, but failed to attribute weight to, one of them—Dr. Appollo—in his RFC assessment. The ALJ therefore presumably had an obligation to perform the special technique in his decision, which was not done here. The ALJ should consider this matter further on remand and clarify accordingly.

15

psychologists (one examining and two non-examining) essentially concluded that Plaintiff was limited to some form of simple, routine, repetitive tasks in a low stress environment. The ALJ failed to meaningfully address these opinions. While Defendant points to various portions of the record in an attempt to explain how the ALJ could have potentially discredited the opinions of Drs. Appollo and Roque (Docket Entry 9 at 11-12), the fact remains that the ALJ did not conduct such an analysis.[16] The undersigned is not persuaded that the ALJ's failure to meaningfully address these opinions was harmless, because this failure gives rise to potential omissions in Plaintiff's mental RFC. And, as explained below, any such omissions may very well have impacted the ALJ's step four analysis as well as an analysis of Plaintiff's credibility. In any event, these errors prevent a thorough review of the ALJ's decision. Remand is therefore proper.

### b. The ALJ's Errors at Step Four Require Remand.

The ALJ decided at step four that Plaintiff could return to her past relevant work as a line leader in the furniture industry as it "does not require the performance of work-related activities precluded by [Plaintiff's RFC]." (*Id.* at 22.) In support, the ALJ concluded that:

> The claimant testified that her job as a line leader in a furniture factory involved walking, pushing, math, and reading a tape measure. She did very little, if any, lifting and it involved pushing flat carts containing lumber. The undersigned notes that at the

---

[16] *See, e.g., Rhyne v. Astrue*, No. 3:09–cv–412, 2011 WL 1239800, at *3 (W.D.N.C. Mar. 30, 2011) (unpublished) ("While the ALJ's RFC assessment may be supported by other evidence contained in the record, it is beyond the scope of this Court's province to determine the weight of the evidence. It is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. The fact remains that the ALJ made a factual finding wholly unsupported by the evidence contained in the record, which affected his RFC assessment and his conclusion that Plaintiff was capable of performing her past relevant work, and ultimately his conclusion that Plaintiff was not disabled at the fourth step of the sequential evaluation process. [I]t is inappropriate for this Court to speculate as to how the ALJ would have weighed the evidence in the absence of his error and what conclusion he would have reached [but for the error]" (citations omitted)).

hearing the claimant testified that she was able to go grocery shopping because she could lean on a the grocery cart while pushing it. Therefore, in comparing the claimant's residual functional capacity with the physical and mental demands of this work, the undersigned finds that claimant is able to perform it as actually performed.

(*Id.* at 22-23.)

Plaintiff asserts that the ALJ erred in his step four conclusions. (Docket Entry 7 at 6.) Plaintiff has the burden through the first four steps of the sequential evaluation process and at the fourth step she must establish that she has an impairment which prevents her from performing her past relevant work. *See Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). The Social Security Regulations speak to the proper procedure for an ALJ to follow at step four. SSR 82–62 provides in pertinent part that:

> In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:
>
> 1. A finding of fact as to the individual's RFC.
>
> 2. A finding of fact as to the physical and mental demands of the past job/occupation.
>
> 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82–62, *A Disability Claimant's Capacity To Do Past Relevant Work*. *See also* 20 C.F.R. §§ 404.1520(e), 416.920(e) ("We use our [RFC] assessment at the fourth step of the sequential evaluation process to determine if you can do your past relevant work . . . .").

Here, the ALJ found as fact that Plaintiff could perform a full range of light work. (Tr. 18.) However, as explained above, in reaching this conclusion the ALJ erred by failing to meaningfully address the opinions of Drs. Appollo, Roque, and Perkins in his decision.

17

The undersigned cannot conclude that the ALJ's apparent failure to evaluate Plaintiff's mental RFC was harmless. Because it is unclear whether Plaintiff's RFC should include additional mental limitations, and what the impact of any additional limitations would be, the ALJ's RFC finding is not susceptible to meaningful judicial review and therefore cannot be said to be supported by substantial evidence.[17] It is thus impossible for the undersigned to evaluate if the ALJ's step four determination is supported by substantial evidence, because the first phase of step four requires an accurate assessment of Plaintiff's RFC.[18]

The second phase of the ALJ's step four analysis is also problematic. As noted, it requires the ALJ to make a finding of fact regarding the physical and mental demands of the claimant's past relevant work. The only mental requirements that the ALJ found at step four were that Plaintiff's past relevant work required her to perform "math" and "reading a tape measure." (Tr. 22.) Had the ALJ adopted the findings of Drs. Appollo, Roque, and Perkins, Plaintiff would be limited to a full range of light work *and* be further limited to simple,

---

[17] *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997) (concluding that before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence); *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983) ("Judicial review of an administrative decision is impossible without an adequate explanation of that decision by the administrator.").

[18] *See, e.g., Jensen v. Astrue*, No. 6:11–cv–06298–ST, 2012 WL 4470507, at *8 (D. Or. Sept. 25, 2012) (unpublished) ("The ALJ also failed to address RFC assessments prepared by two state agency reviewing psychologists, each of whom determined that [claimant] had moderate limitations in several important functional area. Because the RFC does not account for these potential additional limitations, the RFC assessment is erroneous. Likewise, the ALJ's step four finding also is erroneous.") (citations omitted); *Gibeau v. Astrue*, No. 3:10–802–RMG–JRM, 2012 WL 393408, at *10 (D.S.C. Jan. 11, 2012) (unpublished) ("As the RFC and credibility analysis is not supported by substantial evidence, it is unclear whether the ALJ's determination that Plaintiff could perform her past relevant work is supported by substantial evidence because it is unclear from the analysis whether Plaintiff could perform her past relevant work with her mental and vision impairments. As noted above, Plaintiff testified that she would be unable to perform her past relevant work as a telephone answering service operator because of problems seeing the computer and because of problems with her hands. The ALJ did not address this testimony in his decision.").

18

routine, repetitive tasks in a low stress environment. Plaintiff testified at her hearing that she could not return to her prior position in the furniture industry because it required computer work she was unable to perform. (*Id.* at 35-36, 43, 51-53.) Plaintiff also testified that she was demoted when her impairments caused her work productivity to degrade.[19] (*Id.* at 51-53.) The ALJ did not address these issues in his decision.

The third phase of the ALJ's step four analysis is flawed for similar reasons. As noted, it requires a finding of fact that the individual's RFC would permit a return to her past job or occupation. The ALJ made such a finding here, however, as discussed above, the ALJ's RFC is not susceptible to judicial review because it neglected to address Plaintiff's potential non-exertional limitations. Again, had the ALJ adopted the findings of Drs. Appollo, Roque, and Perkins, Plaintiff's RFC would be further limited to simple, routine, repetitive tasks in a low stress environment. The ALJ did not make any finding regarding whether Plaintiff's prior position was in a low stress environment and did not make any findings regarding whether Plaintiff's past relevant work was simple, routine, and repetitive.

The undersigned notes further that the ALJ's alternative conclusion regarding the Grids is also problematic. If a claimant has no nonexertional impairments that prevent her from performing the full range of work at a given exertional level, the Commissioner may rely solely on the Grids to conclude a Plaintiff is not disabled. *Coffman*, 829 F.2d at 518; *Gory*

---

[19] The ALJ concluded that Plaintiff could return to her past relevant work as a line leader in the furniture industry, yet Plaintiff's testimony suggests that she was demoted from that position to the position of "running a saw" because she "messed up" "[p]robably miscount[ed], [did not] put enough wood on the truck or setting up the line wrong." (Tr. 51.) Plaintiff testified that "after her [health] changed" she "was much slower and [her] production fell." (*Id.*) The ALJ did not address Plaintiff's "running [of] a saw." In any event, the essence of Plaintiff's testimony appears to be that she could not operate the computer necessary to perform these positions. (*Id.* at 35-36, 43, 50-53.)

*v. Schweiker*, 712 F.2d 929, 930-31 (4th Cir. 1983). However, the Grids are dispositive of whether a claimant is disabled only when the claimant suffers from purely exertional impairments. *Aistrop v. Barnhart*, 36 Fed. App'x 145, 146 (4th Cir. 2002). To the extent that nonexertional impairments further limit the range of jobs available to the claimant, the Grids may not be relied upon to demonstrate the availability of alternate work activities. *Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir. 1983). Here, as explained above, the ALJ's RFC is not supported by substantial evidence because it is not articulated such that it is susceptible to judicial review, which makes it impossible to determine whether Plaintiff can perform a full range of light work. To determine whether the ALJ may properly use the Grids turns, at least in part, on whether Plaintiff has non-exertional impairments that reduce her occupational base to perform a full range of work at a given level. Consequently, the ALJ's reliance on the Grids in the alternative also lacks substantial evidence.

### c. Credibility

Plaintiff asserts further that the ALJ's decision that she was not entirely credible was unsupported "by the majority of the medical evidence." (Docket Entry 7 at 8.) The Fourth Circuit Court of Appeals has adopted a two-step process by which the ALJ must evaluate a claimant's symptoms. The first step requires the ALJ to determine if the plaintiff's medically documented impairments could reasonably be expected to cause plaintiff's alleged symptoms. *Craig*, 76 F.3d at 594. The second step includes an evaluation of subjective evidence, considering claimant's "statements about the intensity, persistence, and limiting effects of [claimant's] symptoms." *Id.* at 595 (citing 20 C.F.R. §§ 416.929(c)(4) and 404.1529(c)(4).) "The ALJ must consider the following: (1) a claimant's testimony and other

statements concerning pain or other subjective complaints; (2) claimant's medical history and laboratory findings; (3) any objective medical evidence of pain; and (4) any other evidence relevant to the severity of the impairment." *Grubby v. Astrue*, No. 1:09cv364, 2010 WL 5553677, at *3 (W.D.N.C. Nov. 18, 2010) (unpublished) (citing *Craig*, 76 F.3d at 595; 20 C.F.R. § 404.1529(c).) "Other evidence" refers to factors such as claimant's daily activities, duration and frequency of pain, treatment other than medication received for relief of symptoms, and any other measures used to relieve claimant's alleged pain. *Id.* Moreover, SSR 96-8p requires that:

> The adjudicator must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC. Careful consideration must be given to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by objective medical evidence alone.

SSR 96-8p. Similarly, in determining the credibility of a claimant, SSR 96-7p, *Assessing the Credibility of an Individual's Statements*, instructs the ALJ to "consider the entire case record" and requires a credibility determination to "contain specific reasons for the finding on credibility, supported by the evidence in the case record[.]" SSR 96-7p. Importantly, an ALJ's credibility determination is also entitled to "substantial deference." *Sayre v. Chater*, No. 95-3080, 1997 WL 232305, at *1 (4th Cir. May 8, 1997) (unpublished); *Salyers v. Chater*, No. 96-2030, 1997 WL 71704, at *1 (4th Cir. Feb. 20, 1997) (unpublished).

Here, the ALJ concluded:

> After considering the evidence of record, the undersigned finds that the claimant's medically determinable impairment could reasonably be expected to produce the alleged symptoms; however, the claimant's statements concerning the intensity,

21

> persistence and limiting effects of these symptoms are not
> credible to the extent they are inconsistent with the residual
> functional capacity assessment . . . .

(Tr. 21.)

Thus, in evaluating plaintiff's credibility, the ALJ relied on his RFC determination. The issue with this approach, however, is that the ALJ's RFC finding was flawed. Different RFC findings would have, or at least could have, impacted the ALJ's credibility determination. For this reason, on remand, the ALJ's credibility evaluation may also change. Put differently, as demonstrated above, it is not clear the ALJ actually considered all of the evidence of record. Even assuming the ALJ did consider all the evidence, it is not clear what weight the ALJ assigned to the opinions of Drs. Appollo, Roque, and Perkins. If the ALJ concluded that the limitations proposed by these three should be discounted, an explanation as to why should have been forthcoming. If, on the other hand, the ALJ accorded one or more of them substantial weight, additional limitations should have been incorporated into Plaintiff's RFC. In short, the ALJ's RFC analysis never articulated a meaningful assessment of Plaintiff's mental RFC. Consequently, the undersigned concludes that the ALJ's credibility analysis—hinging as it does upon a flawed RFC—is incomplete and not supported by substantial evidence.[20]

---

[20] *See, e.g., Gibeau*, 2012 WL 393408, at *9 (concluding in part that the ALJ's credibility analysis was flawed where the ALJ did not appear to have considered all of the evidence in making his decision); *Juarez v. Astrue*, No. 09–C–4021, 2010 WL 1580200, at *12 (N.D. Ill. Apr.19, 2010) (unpublished) ("[I]n assessing plaintiff's credibility, the ALJ relied on his findings of plaintiff's RFC. The problem with this approach, however, is that the ALJ's RFC finding was not properly supported. Different RFC findings, accordingly, would, or could have, affected the ALJ's credibility determination. For this reason, on remand, the ALJ's credibility evaluation may also change."); *Wheeler v. Astrue*, No. 5:08cv164, 2009 WL 4666453, at *30 (N.D.W. Va. Dec. 7, 2009) (unpublished) (concluding that the ALJ's failure to properly consider claimant's mental impairment justified conclusion that credibility analysis was unsupported by substantial evidence).

None of this necessarily means that Plaintiff is disabled under the Act and the undersigned expresses no opinion on that matter. Nevertheless, in light of all of the above, the undersigned concludes that the proper course here is to remand this matter for further administrative proceedings. Finally, the undersigned declines consideration of the additional issues raise by Plaintiff at this time. *Hancock v. Barnhart*, 206 F. Supp. 2d 757, 763-64 n.3 (W.D. Va. 2002) (on remand, the ALJ's prior decision as no preclusive effect, as it is vacated and the new hearing is conducted de novo).

## VI. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is not supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that the Commissioner's decision finding no disability be **REVERSED**, and the matter be **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for further administrative action as set out above. To this extent, Plaintiff's Motion for Judgment Reversing the Commissioner (Docket Entry 6) should be **GRANTED** and Defendant's Motion for Judgment on the Pleadings (Docket Entry 8) be **DENIED**.

Joe L. Webster
United States Magistrate Judge

Durham, North Carolina
August 14, 2013

23